UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD HAMMER,

          Plaintiff,                                       Hon. Ellen S. Carmody

v.                                                 Case No. 4:05 CV 88

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  On December 30, 2005, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment.  28 U.S.C. § 636(c)(1).  By Order of Reference, the Honorable Richard Alan Enslen referred the matter to this Court.  (Dkt. #8).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 61 years of age on the date of the ALJ's decision.  (Tr. 28, 34).  He earned a bachelor's degree and worked previously as a security officer, community corrections coordinator, deputy sheriff, and warehouse worker.  (Tr. 73, 81-84).

Plaintiff applied for benefits on July 29, 2002, alleging that he had been disabled since May 3, 2002, due to diabetes.  (Tr. 54-56, 67).  Plaintiff's application was denied, after which time he requested a hearing before an ALJ.  (Tr. 37-53).  On March 30, 2004, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Michelle Ross.  (Tr. 238-68).  In a written decision dated April 28, 2004, the ALJ determined that Plaintiff was not disabled.  (Tr. 27-34).  The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter.  (Tr. 5-8).  Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).


## MEDICAL HISTORY

Plaintiff was diagnosed with diabetes in approximately 1994.  (Tr. 127).

On August 23, 2001, Plaintiff was examined by Dr. Edward Newcomb.  (Tr. 105). The results of a physical examination were unremarkable.  Plaintiff reported that he had discontinued

taking his diabetes medication and was "fairly non-compliant with his lifestyle."  Plaintiff was diagnosed with uncontrolled type-II diabetes mellitus and instructed to take his medication.  *Id.*

On January 10, 2002, Plaintiff was examined by Dr. G.B. Lopez.  (Tr. 127).  Plaintiff reported that he was experiencing "sharp" pain in his feet.  Plaintiff was diagnosed with poorly controlled type-II diabetes mellitus with peripheral neuropathy.  *Id.*  On January 31, 2002, Plaintiff participated in an EMG and nerve conduction study, the results of which revealed findings "consistent with a polyperipheral neuropathy with evidence of demyelinization."  (Tr. 117-18).

On August 12, 2002, Dr. Lopez reported that Plaintiff "is unable to work because of peripheral neuropathy."  (Tr. 159).  On August 20, 2002, Plaintiff completed a questionnaire regarding his activities.  (Tr. 88-93).  Plaintiff reported that he prepares meals, vacuums, washes laundry, performs lawn care, shops, reads, watches television, visits with his grandchildren, attends church, and cares for his personal needs.  *Id.*

On October 18, 2002, Plaintiff was examined by Dr. Keith Papendick.  (Tr. 141-46). Plaintiff reported that his diabetes was "well controlled."  (Tr. 144).  Plaintiff also reported that he exercises daily by walking and performing calisthenics.  (Tr. 141).  The results of an examination were unremarkable with no evidence of joint deformity or muscle atrophy.  (Tr. 142-44).  Plaintiff's gait was "stable and within normal limits."  (Tr. 146).  He was also able to heel/toe walk and squat and recover without difficulty.  (Tr. 143-44).  Plaintiff also performed a variety of other diagnostic movements and activities without difficulty.  (Tr. 145).

On February 20, 2003, Dr. Lopez completed a Diabetes Mellitus Impairment Questionnaire.  (Tr. 197-202).  The doctor reported that Plaintiff suffered from non-insulin dependent type-II diabetes mellitus.  (Tr. 197).  Dr. Lopez reported that Plaintiff experienced pain

and numbness in his legs as well as dysesthesia in his feet.  (Tr. 197-98).  The doctor also reported

that Plaintiff experienced peripheral neuropathy. (Tr. 199). Dr. Lopez reported that during an 8-hour

day Plaintiff can sit for 4 hours and can stand/walk for 2 hours, but requires a sit-stand option.  (Tr.

200).  The doctor also reported that Plaintiff can frequently lift/carry 20 pounds and can occasionally

lift/carry 50 pounds.  (Tr. 200-01).

On December 4, 2003, Dr. Lopez reported that Plaintiff was experiencing "severe"

peripheral neuropathy and chronic pain which prevented him from standing or sitting "for long

periods of time."  (Tr. 217).  The doctor concluded that Plaintiff "is unable to be gainfully

employed." *Id.*

At the administrative hearing Plaintiff testified that he prepares meals, cleans the

house, walks his dog, mows the lawn, drives, shops for groceries, and rides his exercise bike.  (Tr.

253-59).  Plaintiff reported that he is unable to stand or sit for prolonged periods of time, but can lift

a 50 pound bag of dog food without difficulty.  (Tr. 252, 257-58).

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations provide a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B.  The ALJ's Decision**

In his decision denying Plaintiff's claim for benefits, the ALJ determined that Plaintiff suffers from the following severe impairments: (1) diabetes mellitus, and (2) diabetic neuropathy. (Tr. 30). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff could perform his past relevant work as a community corrections coordinator, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 30-33).

**1.  The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift/carry up to 20 pounds and can frequently lift/carry up to 10 pounds; (2) he cannot engage in prolonged walking; (3) he cannot operate foot controls; (4) he cannot work around unprotected heights or dangerous moving machinery; and (5) he requires a sit/stand option. (Tr. 31). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

Vocational expert, Michelle Ross, testified that based on Plaintiff's RFC he would still be able to perform his past relevant work as a community corrections coordinator. (Tr. 261-64). Relying on this testimony, the ALJ concluded that Plaintiff was not disabled. The vocational expert further testified that if even Plaintiff were unable to perform any of his previous work, there still existed approximately 3,300 jobs as an emergency dispatcher or probation officer which Plaintiff could perform consistent with his RFC. (Tr. 262-63).

a.   The ALJ Properly Evaluated the Medical Evidence

As noted above, in a February 20, 2003 questionnaire Dr. Lopez reported that during an 8-hour day Plaintiff can stand/walk for 2 hours, but can sit for only 4 hours.  (Tr. 200).  Plaintiff asserts that such a limitation is inconsistent with the ALJ's RFC determination and, moreover, renders him disabled.  Plaintiff further asserts that because Dr. Lopez was his treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate.  *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation.  *See Cohen*, 964 F.2d at 528.  The ALJ need not defer to an opinion contradicted by substantial medical evidence.  *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).  Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her rationale for doing so.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

In January 2002, Dr. Lopez stated that Plaintiff did not show signs of foot ulceration or abnormal shape, nail anomaly, ankle weakness or foot weakness.  According to Dr. Lopez, Plaintiff had good pedal pulses in both feet and no loss of protective sensory function.  (Tr. 130). Additionally, Dr. Lopez reported normal vision and no diabetic retinopathy.  (Tr. 129).  In October 2002, Keith Papendick, M.D., examined Plaintiff.  Plaintiff advised Dr. Papendick that he walked and performed calisthenics each day for exercise.  (Tr. 141).  He walked with a hesitant but normal gait.  (Tr. 143).  He was able to walk on his heels and toes, fully squat, and transfer off and on of the examining table.  (Tr. 143, 146).  He had normal deep tendon reflexes, normal cranial nerve functioning and normal grip strength.  (Tr. 144-146).  He showed no signs of sensory loss or end organ damage.  (Tr. 142).  He had no signs of swelling, warmth, redness, erythema, edema or rash. (Tr. 142, 144).  His lungs, heart and valve sounds were all normal.  (Tr. 143).  Thus, although the record is clear that Plaintiff has peripheral neuropathy in his feet, the evidence as a whole does not support Dr. Lopez's conclusion that this causes Plaintiff to be totally disabled.

As the ALJ correctly concluded, the objective medical evidence fails to support Dr. Lopez's opinion.  Plaintiff's reported activities further contradict Dr. Lopez's opinion that Plaintiff is incapable of performing work consistent with the ALJ's RFC determination.  In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Lopez's opinion.

b.   The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that "with respect to the extent and severity of his impairment and the resulting functional limitations," Plaintiff's testimony was "somewhat overstated and

9

inconsistent with the available evidence." (Tr. 31). Plaintiff asserts that the ALJ improperly

discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical

impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a

claimant's "statements about [his] pain or other symptoms will not alone establish that [he is]

disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d

525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has

established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the

following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*

standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The Court does not dispute that Plaintiff suffers from severe impairments which impose upon him a certain degree of limitation. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence. Nor are they supported by his level of reported activity. Moreover, the record contains no evidence that Plaintiff's impairments are sufficiently severe as to produce the pain and limitation alleged. In sum, there exists substantial evidence to support the ALJ's credibility determination.

c.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to

a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether, in light of his limitations (as expressed in the ALJ's RFC determination), Plaintiff could perform his past relevant work, to which the vocational expert answered in the affirmative. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

d.   Plaintiff is not Entitled to a Remand in this Matter

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 226-37). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 5-8). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner

would have reached a different result if presented with the new evidence.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of two items.  The first is a report from the Department of Veterans Affairs indicating that Plaintiff experiences 20-30 percent disability as a result of exposure to herbicide during his service in Vietnam.  (Tr. 228-31).  The second item consists of a November 12, 2004 questionnaire completed by Dr. Lopez, in which he asserts that during an 8-hour day Plaintiff can stand/walk and sit for only one hour each.  (Tr. 232-37).  Neither of these reports, however, is accompanied by the results of any additional tests or examinations which may have been performed.  It is not reasonable to conclude that consideration of such conclusory reports - in the complete absence of any supporting medical evidence - would result in a different outcome.  Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.

Date:  March 13, 2007                                   /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge